WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Samer Sannoufi,<br><br>     Plaintiff,<br><br>v.<br><br>Darrell Krueger, et al.,<br><br>     Defendants. | No. CV-14-00439-PHX-GMS<br><br>**ORDER** |

  Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 21) and Motion to Strike Plaintiff's Appendix to Response to Motion For Summary Judgment. (Doc. 29.) For the following reasons, the Court grants Defendants' Motion for Summary Judgment and denies the Motion to Strike as moot.

**BACKGROUND**

  The following facts are undisputed, unless otherwise noted. On Thursday, May 17, 2012, Kathy Gee went to the Gilbert Police Department to file a criminal report against Dr. Samer Sannoufi. An officer recorded Ms. Gee's statement, in which she indicated that on the previous day, May 16, 2012, she accompanied her grandfather to his appointment at Sannoufi's medical practice. Ms. Gee reported that, after discussing her fertility concerns with Sannoufi while her grandfather was out of the room, he offered to perform a free physical examination, at which time Ms. Gee alleges Plaintiff placed his fingers inside her vagina, rubbed her clitoris, and pinched the nipple on her left breast. She told the officer that Plaintiff asked if she was "turned on" by these actions. (Doc. 22,

1 Ex. A, at 4.) According to Gee, the exam took approximately ten to fifteen minutes.

2 On Monday, May 21, 2012, Detective Darrell Krueger received a notification of assignment to Gee's case. At the time, Krueger had been an officer with the Gilbert Police Department for a decade, and a detective in the child/sex crimes unit since November of the previous year. In his position, Krueger had undergone specific training in investigating sex crimes. Detective Krueger personally interviewed Gee on May 21, during which she repeated her allegations against Plaintiff. Plaintiff insists that Ms. Gee's version of events changed repeatedly throughout her statements to police, such as whether the Plaintiff had worn gloves or sanitized his hands during the incident. After the interview, Detective Krueger assisted Ms. Gee in attempting to reach Sannoufi by telephone in order to gain physical evidence implicating him in the alleged assault, and it was eventually arranged that she would return to his office the following day, May 22, 2012, around 1:30 in the afternoon. Ms. Gee agreed to carry an audio-recording device with her to this follow-up. Gilbert police accompanied Ms. Gee to the office and listened in during her interaction with Plaintiff.

A recording of their conversation reveals that Ms. Gee prompted Sannoufi to discuss the events that had supposedly transpired the day before. When Ms. Gee brought up his attempts to stimulate her, Sannoufi said in response:

> No, okay this is—no, first of all, yes, all that should come—come together. You should have secretion, you should have, um, you can—you should get moist, and you should have—you should see some things aroused. And by the way, I normally don't do this to strangers, not every patient. If you were a stranger I would just write your labs. I don't give a fuck.

(Doc. 22, Ex. B, at 15.) He went on to state that when he "checked there's no, you know . . . no secretion." (*Id.*) Although when Ms. Gee inquired about his references to her being "turned on," he denied ever having asked her that, he added that he had "wanted to check if [she] had a hard nipple." (*Id.* at 17.) Plaintiff also acknowledged that "no one would" help Ms. Gee the way he had, and stated, in reference to his examination, that "this is actually off the book." (*Id.* at 18.) At the conclusion of the appointment Plaintiff offered

to order more tests for Ms. Gee, they exchanged cell phone numbers, and Plaintiff said Ms. Gee should call him and he would "take care of [her]." (*Id.* at 21.)

On Wednesday, May 23, 2012 Detective Krueger arrested Plaintiff at his office. On Krueger's recommendation, a Deputy County Attorney for Maricopa County filed a Direct Complaint against Plaintiff; a grand jury then issued a supervening indictment on May 30, 2012. Detective Krueger testified before this grand jury. According to Plaintiff, Detective Krueger falsely stated that Plaintiff specifically discussed the alleged acts of sexual abuse with Ms. Gee on the audio recording. On motion from the Plaintiff, the Maricopa County Superior Court conducted a hearing on June 15, 2012 to consider Plaintiff's request for bail and release. Detective Krueger also spoke at this hearing, and Plaintiff challenges the veracity of Krueger's testimony then as well. Ultimately, Plaintiff was denied bail and he remained in custody until the criminal proceedings against him began on November 6, 2012.

An investigator hired by Plaintiff discovered a variety of information concerning Ms. Gee that became known at trial. For example, her boyfriend at the time testified at trial that Ms. Gee asked him to lie to the investigator about the incident involving Plaintiff, and that he believed her to have been dishonest about what she stated happened. The accounts of various members of Plaintiff's office challenged key facts that Ms. Gee had relayed to police, such as the length of time she was alone with Plaintiff, and that he had performed any sort of pelvic exam on her, as it was contrary to office policy to not summon a female staff member to the room during such procedures. Ms. Gee apparently gave false information to Plaintiff about her plans to move to Australia with her boyfriend, and manufactured the fertility problems she purportedly sought Plaintiff's medical advice for: Ms. Gee admitted during trial that she had been pregnant several times in the months leading up to May 16, 2012, and that she suffered a miscarriage approximately ten days prior to her initial meeting with Plaintiff. Ms. Gee also supposedly went on a date within hours of the alleged sexual assault, and maintained profiles on two dating websites, including one aimed at pairing individuals interested in

both a romantic and financial relationship.

Both sides presented their closing arguments at the end of December, and the jury returned a "not guilty" verdict on all counts on January 4, 2013. Plaintiff filed the instant action for damages on December 20, 2013, after having served on Defendants a Notice of Claim as required by Arizona Revised Statutes section 12-821.01(A) on May 15, 2013. Defendants removed the case to federal court on March 5, 2014, and now seek summary judgment on all counts. (Doc. 21.)

**ANALYSIS**

**I.      Motion to Strike**

Under Federal Rule of Civil Procedure 56(c)(2), a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Defendants have filed a Motion to Strike Plaintiff's Appendix to Response to Motion for Summary Judgment and all exhibits attached thereto on the grounds that Plaintiff's appendix is not authorized by any Federal Rule of Civil Procedure and contains an affidavit from a witness, Dorian Bond, that was not properly disclosed by Plaintiff pursuant to his Rule 26(a) discovery obligations. (Doc. 29.) The Court has reviewed the contents of the appendix and determined that they do not alter its ruling on Defendants' Motion for Summary Judgment. Because the Motion for Summary Judgment is being granted for the reasons stated below, the Motion to Strike is denied as moot.

**II.     Motion for Summary Judgment**

**A.      Summary Judgment Standard**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson,* 477 U.S. at 248). Thus, the nonmoving party must show that the genuine factual issues "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987) (quoting *Anderson*, 477 U.S. at 250).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, the movant is entitled to judgment as a matter of law. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Analysis of Law**

Title 42, § 1983 of the United States Code provides that "[e]very person who, under color of [State law] . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. Section 1983 confers no substantive rights itself, but, rather, provides remedies for deprivations of rights established elsewhere. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Here, Sannoufi relies on substantive rights conferred by the Fourth and Fifth Amendment, as incorporated to the states through the Fourteenth Amendment. Specifically, Sannoufi asserts that Detective Krueger lacked probable cause when he arrested Sannoufi, in violation of his Fourth Amendment right to be free from unreasonable searches and seizures (Count 4). Plaintiff further contends that Krueger's testimony during the pre-indictment, pre-trial, and trial stages both infringed on his Fifth and Fourteenth Amendment rights to due process (Count 3) and also constituted abuse of process under Arizona law (Count 6). Additionally, Plaintiff implicates Detective Krueger and the Gilbert Police Department in

conspiring to commit the aforementioned constitutional violations (Counts 1 and 2), and charges the City of Gilbert and the Gilbert Police Department as being independently liable for the actions of Detective Krueger that infringed on his rights secured by the Fourth, Fifth, and Fifteenth Amendments (Counts 3, 5). Lastly, Plaintiff claims that Gilbert and its police department violated his rights to due process by inadequately training Detective Krueger (Count 7).

### 1. Defendant Krueger

#### a. Wrongful Arrest

Defendant Krueger contends that no constitutional violation occurred because Plaintiff's arrest was supported by probable cause, and, therefore, he is entitled to qualified immunity.

The test for whether probable cause exists is whether "at the moment of the arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed . . . an offense." *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) (quoting *United States v. Jensen*, 425 F.3d 698 (9th Cir. 2005)). Moreover, the doctrine of qualified immunity shields government officials performing discretionary functions from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is an affirmative defense, so the defendant asserting qualified immunity bears the burden of both pleading and proving the defense. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). In the context of a motion for summary judgment in a § 1983 action, the defendant bears the burden of establishing that there is no genuine issue of material fact to be resolved regarding his immunity. *See Moreno v. Baca*, 431 F.3d 633, 638 (9th Cir. 2005).

The determination of whether a law enforcement officer is entitled to qualified immunity involves a tiered analysis. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The first

1  inquiry is whether, "based upon the facts taken in the light most favorable to the party
2  asserting the injury," the officer's conduct in fact violated the plaintiff's constitutional
3  rights. *Johnson v. County of L.A.*, 340 F.3d 787, 791 (9th Cir. 2003). Next, the court
4  considers whether the officer could nevertheless have reasonably, albeit mistakenly,
5  believed that his conduct did not violate a clearly established constitutional right. *Id.* at
6  791–92. The assessment of whether an officer is entitled to qualified immunity "turns on
7  the objective legal reasonableness of the action," assessed in light of the legal rules that
8  were well contoured at the time it was taken. *Pearson*, 555 U.S. at 244. In other words,
9  qualified immunity protects "all but the plainly incompetent or those who knowingly
10 violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). In this case, Detective
11 Krueger will be immune to claims that Sannoufi's arrest was unlawful for lack of
12 probable cause unless it is obvious that no reasonably competent officer would have
13 believed probable cause existed. *See id.*

14      The Court is satisfied that, even though a reasonable jury might find that Officer
15 Krueger lacked probable cause, the arrest was not contrary to any clearly established law.
16 Law enforcement officers may rely on statements made by alleged victims of a crime to
17 identify potential suspects; however, such information does not, on its own, support a
18 finding of probable cause if the information is not reasonably trustworthy or reliable.
19 *Stoot v. City of Everett*, 582 F.3d 910, 919 (9th Cir. 2009); *see also Peng v. Mei Chin*
20 *Penghu*, 335 F.3d 970, 978 (9th Cir. 2003). At the time of the arrest, two officers had
21 interviewed Ms. Gee, and she gave a detailed account of the incident that had supposedly
22 occurred the previous day in Plaintiff's office. (*See* Doc 22, Ex. A). As described,
23 Plaintiff's conduct toward Ms. Gee would constitute sexual abuse and sexual assault. (*See*
24 *id.* at 4). However, Krueger did not just accept Ms. Gee's allegations of Sannoufi's
25 misconduct against her. Rather, at his direction, law enforcement wired Ms. Gee with an
26 audio recording device and sent her back to Plaintiff's office. (*See id.* at 32–33; Doc. 22,
27 Ex. B, at 8–22.). Gilbert police listened in on Ms. Gee's conversation with Plaintiff,
28 where Ms. Gee made repeated references to Plaintiff having physically touched her

1  during her prior visit without refutation by Sannoufi. (*See* Doc. 22, Ex. A at 14–19).
2  Plaintiff also admitted that their interaction was "off the book." (*See id.* at 18). From this
3  discussion, and his decade of experience as an officer, Detective Krueger construed
4  Plaintiff's statements as corroborating Ms. Gee's allegations that Plaintiff had performed
5  a physical exam on Gee during which he acted lasciviously towards her. *See Hart v.*
6  *Parks*, 450 F.3d 1059, 1067 (9th Cir. 2006) (explaining that Officers are permitted to
7  "draw on their own experience and specialized training to make inferences from and
8  deductions about the cumulative information available to them that might well elude an
9  untrained person").

10  The evidence subsequently revealed at trial about Ms. Gee's behavior after the
11  alleged sexual assault and her history of dishonesty certainly sheds doubt on the
12  reliability of the statements she gave police. However, these facts are not material to
13  whether, at the time of the arrest, Krueger had sufficient probable cause to bring Sannoufi
14  into custody. "Fourth Amendment issues are evaluated for objective reasonableness
15  based upon the information the officers had when the conduct occurred." *See Peng*, 335
16  F.3d at 978. Thus, on balance, it seems as though Sannoufi's arrest was supported by
17  probable cause.

18  In any event, as the court in *Peng v. Mei Chin Penghu* explained, even if this
19  Court "ha[s] doubts about probable cause, . . . qualified immunity is available if a
20  reasonable police officer could have believed that his or her conduct was lawful in light
21  of the clearly established law and the information the searching officers possessed." *See*
22  335 F.3d at 980 (quoting *Fuller v. M.G. Jewelry*, 950 F.2d 1437, 1443 (9th Cir. 1991). In
23  *John v. City of El Monte*, for example, the Ninth Circuit upheld qualified immunity where
24  an officer arrested a veteran teacher of thirty years with an unblemished record based on
25  the uncorroborated statements of a ten-year-old that the plaintiff had sexually abused her.
26  515 F.3d at 941. The officer had justified his finding of probable cause on his experience
27  in law enforcement, his special training in dealing with sexual abuse case, and his
28  advanced skills in interviewing victims of sexual assault and evaluating the credibility of

their stories. *Id.* at 940. Based on his background and the witness's statements, the court reasoned that a prudent person could have determined, under the totality of the circumstances known to the arresting officer, that probable cause to arrest existed. *Id.* at 941. At the very least, the court concluded, where reasonable juries might differ the doctrine of qualified immunity operates to shield officers from liability for their errors in judgment so long as the arrest was not contrary to any clearly established law. *Id.* at 941–42.

Similarly, it appears that Krueger might have acted in haste in arresting Plaintiff, s*ee id.* at 941, and the possible inconsistencies in Ms. Gee's statements to the two officers point to the need for further investigation and corroboration. *See Stoot v. City of Everett*, 582 F.3d 910, 919–20 (9th Cir. 2009) (finding the shifting statements of a child victim not sufficiently reliable to establish the necessary probable cause for the petitioner's arrest, but that the arresting officer was nevertheless immune from damages). However, even if Krueger was mistaken about the existence of probable cause to arrest Sannoufi, his mistake was not objectively unreasonable. *See Peng*, 335 F.3d at 980. Plaintiff has cited no case that would have put Krueger directly on notice that his decision to rely solely on Ms. Gee's statements and the inferences he drew from the audio recording, without deeper inquiry, was unlawful. For this reason, Krueger is entitled to the benefit of qualified immunity and summary judgment for Defendants on Count 4 is appropriate.

         b**.**  **Due Process Violations: Giving of False Testimony**

A trial witness, including a police officer, sued under § 1983 has absolute immunity with respect to any claim based on the witness's testimony. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983). This rule is well entrenched in the history of the adversarial process and justified by the dictates of public policy: without it, witnesses would be reluctant to testify and "might be inclined to "shade [their] testimony in favor of the potential plaintiff [for] fear of subsequent liability." *Id.* at 332–33. The *Briscoe* rule applies both at the trial and pre-trial stages of litigation. *See Rehberg v. Paulk*, 132 S. Ct. 1497, 1505 (2012) (grand jury proceedings); *Burns v. County of King*, 883 F.2d 819 (9th

1 Cir. 1989) (bond revocation hearing). In addition, the Ninth Circuit has extended *Briscoe* in holding that absolute immunity shields witnesses from claims concerning their given testimony as well as from allegations of conspiracy to commit perjury. *Franklin v. Terr*, 201 F.3d 1098, 1102 (9th Cir. 2000) ("[A]llowing a plaintiff to circumvent the Briscoe rule by alleging a conspiracy to present false testimony would undermine the purposes served by granting witnesses absolute immunity from damages liability under § 1983.").

The principles of *Briscoe v. LaHue* and its progeny are on all fours with this case. In *Briscoe*, the Supreme Court considered whether § 1983 permitted a suit for damages against a police officer who it was alleged had given perjured testimony at the plaintiff's criminal trial. 460 U.S. at 326. The Court concluded that the absolute immunity enjoyed by witnesses who testify in trial proceedings precluded such a suit:

> When a police officer appears as a witness, he may reasonably be viewed as acting like any other witness sworn to tell the truth. . . . Nothing in the language of the statute suggests that such a witness belongs in a narrow, special category lacking protection against damages suits. . . . A police officer on the witness stand performs the same functions as any other witness; he is subject to compulsory process, takes an oath, responds to questions on direct examination and cross-examination, and may be prosecuted subsequently for perjury. . . . Subjecting . . . police officers[] to damages liability under § 1983 for their testimony might undermine not only their contribution to the judicial process but also the effective performance of their other public duties.

*Id.* at 335–36. Similarly, in *Rehberg v. Paulk*, the Court firmly concluded that grand jury witnesses enjoy the same immunity as witnesses at trial, and that this rule may not be circumvented by claiming that a witness conspired to present false testimony. 132 S. Ct. at 1505. Based on this precedent, the Court grants summary judgment to the Defendants on Count 2 and 3 to the extent that they are premised on Detective Krueger's testimony before the grand jury and at Plaintiff's bond hearing.

### c. Conspiracy to Deprive Plaintiff's Constitutional Rights

Plaintiff also alleges the existence of a conspiracy between Detective Krueger and the Gilbert Police Department to violate his constitutional rights as they relate to the aforementioned claims. To establish liability for a conspiracy in a § 1983 case, a plaintiff

- 10 -

must "demonstrate the existence of an agreement or meeting of the minds" to violate his constitutional rights. *Mendocino Envtl. Ctr. v. Mendocino Cnty,* 192 F.3d 1283, 1301 (9th Cir. 1999). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." *Crowe v. Cnty. of San Diego*, 608 F.3d 406, 439 (9th Cir. 2010).

Plaintiff has failed to carry his burden of establishing a triable issue of fact on the existence of a conspiracy between Detective Krueger and the police department he worked for. Plaintiff explicitly states in his Complaint that "Detective Krueger was the only Gilbert Police Officer active in the investigation of this case . . . . He was the case agent and the person responsible for the investigation of this case." (*See* Doc. 1 at 6). No further evidence has been offered tending to show a "meeting of the minds" between Detective Krueger and any other member of the Gilbert Police Department, let alone sufficient proof of a "common objective" broad enough to encompass the stated claims. *See Crowe*, 608 F.3d at 440–41 ("A 'common objective' to merely prosecute [plaintiff] is insufficient; fair prosecution would not violate [his] constitutional rights."). Even if Detective Krueger took some concerted action to accomplish unlawful objectives, he cannot have conspired with himself. For this reason, Plaintiff's Complaint fails to state a cognizable claim of conspiracy and Defendants are entitled to summary judgment on Counts 1 and 2.

### d.     Abuse of Process

Lastly, Plaintiff claims that, by testifying falsely before the grand jury and at the June, 15 2012 custody hearing, Officer Krueger misused the judicial process for a purpose not proper in the regular conduct of the proceedings. (*See* Doc. 1 at 10). Defendants counter that Krueger is entitled to summary judgment on this state law claim because (1) Plaintiff failed to timely comply with Arizona's notice of claim requirements as set forth in Arizona Revised Statutes section 12-821.01; (2) Plaintiff's claim is barred by the one-year statute of limitations, *see* A.R.S. § 12-821; (3) Plaintiff has failed to state a claim for abuse of process as a matter of law; and (4) Detective Krueger is entitled to

absolute immunity from civil damages for his conduct concerning the judicial proceedings. (*See* Doc. 21 at 15–17.)

With respect to Defendants' claim that the abuse of process claim is time-barred, the parties dispute only when the cause of action accrued, triggering the one-year statute of limitations for actions against public employees. Under Arizona Revised Statutes section 12-821.01(B), the cause of action does not accrue until the plaintiff "knows or reasonably should know the cause, source, act, event, instrumentality or condition which caused or contributed to the damage." Aside from Defendants' conjecture that Plaintiff's injury occurred, if at all, when Detective Krueger spoke at his bond hearing in June, 2012, (*see* Doc. 21 at 17), they have offered no evidence demonstrating that Plaintiff reasonably should have been aware of the falsity of his testimony at that time: Plaintiff could just as easily have believed that Krueger was simply mistaken as to the facts. Plaintiff's trial did not conclude until December 21, 2012. (*See* Doc. 21 at 7.) Viewing the evidence in the light most favorable to Sannoufi, a jury could reasonably conclude that he was not injured until Detective Krueger failed to correct his false testimony before the end of closing arguments, thus starting the clock for his serving of a Notice of Claim and filing a lawsuit. As such, Defendants have not met their burden of showing that there is no genuine dispute as to any material fact relating to when Plaintiff discovered he was damaged and the source of that damage.

Moving to the merits of Plaintiff's allegations, the tort of abuse of process "is an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose." *Rondelli v. Pima Cnty.*, 120 Ariz. 483, 489, 586 P.2d 1295, 1301 (Ct. App. 1978). The elements of an abuse of process claim under Arizona law are: "(1) a willful act in the use of judicial process; (2) for an ulterior purpose not proper in the regular conduct of the proceedings." *Crackel v. Allstate Insurance Co.*, 208 Ariz. 252, 257, 92 P.3d 882, 887 (Ct. App. 2004). Plaintiff has proffered no evidence demonstrating that Defendant Krueger's conduct embraces either element of this tort. Rather, the record shows that the

1  legal process was used primarily to seek redress for crimes Detective Krueger believed
2  Plaintiff had committed—the very end the judicial process was designed to accomplish.
3  Furthermore, Plaintiff has submitted nothing demonstrating that a genuine factual dispute
4  exists with respect to Detective Krueger's purpose in testifying. Consequently, Defendant
5  is entitled to summary judgment on the claim of abuse of process (Count 6) as a matter of
6  law.

7  In sum, Defendants have satisfied their burden of establishing that there is no
8  genuine issue of material fact to be resolved regarding Detective Krueger's immunity, the
9  existence of probable cause, or the abuse of process claim. Therefore, the motion for
10 summary judgment as to Counts 1–4 and 6 is granted.

### 2. Gilbert Police Department

A plaintiff may not bring a claim against a governmental agency or department unless it enjoys a separate and distinct legal existence. An entity's capacity to sue or be sued is determined by the law of the state where the court is located. Fed. R. Civ. P. 17(b)(2), (3). In general, a municipal police department is considered a sub-unit of the municipality through which it fulfills its policing function and not an independent legal entity. *See e.g.*, *Carroll v. City of Tempe*, 2010 WL 5343311 (D. Ariz. Dec. 22, 2010); *Skinner v. Pinal Cnty.*, 2009 WL 1407363 (D. Ariz. May 20, 2009); *Gotbaum ex rel. Gotbaum v. City of Phoenix*, 2008 WL 4628675 (D. Ariz. Oct. 17, 2008); *Wilson v. Maricopa County*, 2005 WL 3054051 (D. Ariz. Nov. 15, 2005); *accord Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992). Plaintiff has not cited any Arizona statute that provides that a city police department is amenable to suit. In view of the foregoing, to the extent that Plaintiff has claims against the Gilbert Police Department independent of those he pleaded against the City of Gilbert, (*see* Doc. 1 at 5–9 (claims 1–3, 5, 7)), the Defendants are entitled to summary judgment as a matter of law because a department of a municipality is not a proper party to a suit. *See Gotbaum*, 2008 WL 4628675 at *7 ("[T]he Phoenix Police Department is a subpart of the City of Phoenix, not a separate entity for purposes of suit.").

### 3. City of Gilbert

Plaintiff claims damages from the City of Gilbert for violations of his Fourth, Fifth, and Fourteenth Amendment rights, stemming from his allegedly wrongful arrest and Detective Krueger's giving of false testimony before the Maricopa County Court. Plaintiff also alleges that Gilbert trampled on his due process rights by inadequately training Krueger, leading to the aforementioned constitutional violations.

Municipalities and other local government units are not liable under § 1983 for injuries inflicted solely by its employees or agents. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *see also Sweaney v. Ada Cnty., Idaho*, 119 F.3d 1385, 1392 (9th Cir. 1997) ("[T]he liability of municipalities doesn't turn on the liability of individual officers[;] it is contingent on the violation of constitutional rights."). Instead, a municipality is liable only for constitutional violations occurring pursuant to a policy, practice, or custom of the governmental entity. *Monell*, 436 U.S. at 690. Thus, Plaintiff must not only show a deprivation of his constitutional rights, but also that the City of Gilbert was a "moving force" behind that deprivation. *Id.* at 694. Plaintiff has failed to present any evidence that the City of Gilbert was the "moving force" behind Officer Krueger's actions in the present case. *See id.* When the non-moving party "bear[s] the burden of proof at trial as to an element essential to its case, and that party fails to make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element, then summary judgment is appropriate." *Cal. Architectural*, 818 F.2d at 1468 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)).

As such, the defendants' motion for summary judgment on Counts 3, 5, and 7—to the extent that they contend the City of Gilbert violated Plaintiff's constitutional rights— is granted.

## CONCLUSION

For the foregoing reasons, the Court concludes that there is no genuine issue of material fact in this case, and Defendants' are entitled to the disposition of Plaintiff's claims as a matter of law.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Strike is **DENIED**, and the Motion for Summary Judgment is **GRANTED**. The Clerk of Court is directed to enter judgment accordingly.

Dated this 29th day of October, 2014.

*/s/ A. Murray Snow*
G. Murray Snow
United States District Judge